Our final case of the session will be Benson v. Hartford Life and Accident Insurance Company. Mr. Khan, is it? It's Khan, Your Honor. Khan, all right. Kind of a unique spelling, or an infrequent spelling anyway. May it please the Court, I represent Mr. Benson. Mr. Benson was insured against short and long-term disability by Hartford, who provided insurance policies that funded ERISA plans that were offered by his employer. We're appealing the denial of his long-term disability claim. There are three primary issues that I wish to address today. The first is that ERISA requires that insurers provide a full and fair review. It requires that they diligently investigate a case, that they put together a complete record, that they examine the basis of expert opinions, and that they reach decisions that are supported by substantial evidence. ERISA also requires that administrators must review all of the evidence that is before them at the time that a decision is reached. Third, if the policy provides coverage for disability due to conditions for which no truly objective evidence exists, neither ERISA, particularly the Oliver case from the 11th Circuit, or Hartford's policy requires that the disability be proved with objective evidence. Before going into those... Can you restate that third point? I'm not exactly... The third point is that if the policy covers disability due to conditions which can't be proven with truly objective evidence, and specifically what we're talking about, the symptoms that disabled Mr. Benson were pain, chronic pain, and fatigue. He had several conditions that are known in the medical literature to cause pain and fatigue. Most prominently, polymyalgia rheumatica, but also degenerative joint disease and arthritis. We've got the conditions, they're known to cause these symptoms, and it's also absolutely recognized in the medical literature that there is no objective way to measure pain. There's a case out of the 11th Circuit that says there's no pain dipstick. So if there's no objective way to measure this condition, then what? Well, then you have to do a thorough investigation and evaluate all of the evidence, and you can't just rely on opinions of experts that review paper and say, well, yeah, he's got this condition. We don't dispute that. We don't dispute that that condition causes these symptoms, but we don't think those symptoms are severe enough to prevent him from working. There's no basis for the third part of that opinion. Hartford has two responses to that, I think, that I want you to address. First, it says it's true that we can't contest subjective complaints of pain, but what we can do is look at objective evidence with regard to whether he's actually impaired in his ability to do his job. Okay, that's one thing. And then the second thing they say is, well, in the medical records, there's evidence that contradicts the subjective complaints of pain where, I guess it's in the doctor's notes, Mr. Benson reports that he's feeling okay. As far as his PMR, he's doing better, things like that. So if you could address those two points. Yes, and the first point... The difference between subjective complaints of pain and evidence of functional impairment in one's ability to work. Actually, Mr. Benson provided the only evidence and the best evidence that exists regarding the impact that these conditions had on his ability to do his job. That evidence is he went back to work. Mr. Benson went back to work and worked for a period of seven or eight months throughout the entire administrative period at his job doing the exact same activities that he had previously done, but because of his diminished capacity and ability, and probably only because he was an executive vice president who had built the company up to what it was at the time that he became disabled, he was provided with that job. But he was provided with a job that was at a lesser position and he took almost a 60% pay cut while still trying to work almost the same hours. That's the only way you can determine how pain or fatigue would affect you in your daily job is to go out and try and do it. And Mr. Benson not only went out and tried to do it and had his doctor confirm that he just can't do this job, the doctor didn't even want him to go back and do the job, but there's also a letter provided by the president of the company who testified to Mr. Benson's character, to his honesty, to his ethics, to his hard work and effort, and who said that when he came back to work, his ability to walk was severely impaired, his ability to think was severely impaired, his ability to communicate was severely impaired. That letter was not considered by the insurance company, correct? That is correct. And walk me through why that letter wasn't provided in the first place and why the insurance company should be required to open things back up and look at that. Well, let me start at the back part of your question. I'm going to answer your question fully, and it's a good question. The reason that the record was opened back up was because the insurance company had to correct a mistake that it made, and it wasn't the first time that it made that mistake. The insurance company, on more than one occasion, had failed to provide evidence that was submitted to its doctors, so its doctors are rendering opinions based on an incomplete review of the record. So it was Hartford that agreed to reopen the record to correct its mistake. So at the time that Hartford said it would reopen the record and look at the evidence, we submitted additional evidence. The specific rule that deals with that is the general procedure rule, and the general procedure rule says that they should evaluate all the evidence that's submitted at the time that it's submitted before they render their opinion. And there are cases out of the 11th Circuit that we cited that say that's what that means. It means exactly what it says. If the evidence is before them. And, Your Honor, the letter is a one-page little letter. It's very praiseworthy of Mr. Benson, but it's not long. Yeah, I'm familiar with the letter. And they had the letter for seven or eight weeks before they issued their ruling. So what you're saying is if the company hadn't made a mistake such that they needed to reopen the record, you wouldn't have been able to get the letter in. But since they're reopening the record anyway under the general procedures, that allows your client to enter more evidence. Is that correct? Yes, Your Honor. I'm saying my client is, the law suggests that my client can continue to offer evidence as he acquires it. And the letter wasn't written at the time. Frankly, I think the reason the letter wasn't written was because Mr. Benson was too proud to ask for it. Mark, can a claimant make a subsequent claim if the first one is denied? Let's say, and I'm not saying we're going to do this, but let's say we decided against your client today. Could he file a new claim tomorrow with greater evidence, or is there some policy that once you've made your claim, you're done? Well, I don't believe he can. The biggest problem is that since he's no longer working, the premiums are no longer being paid. He's no longer covered except through waiver of premium. So this is his one shot. It's one shot. And it is unfortunate. It's unfortunate in other cases that I've been involved in because sometimes the doctors are not able to make a diagnosis by the time the claim is required. In the ERISA laws, as the court probably knows, you have to file the claim. They make a decision. You only have a certain amount of time to appeal that claim. And for claimants, they have to find a lawyer. And then the lawyer has to work with the doctors and work with everybody to try to get the evidence up. That can end up being a very difficult thing to do. So aside from the letter, was there any other evidence that the insurance company never considered, or at least that their reviewing doctors never considered? Yes. The other evidence that they never considered was a second report from Dr. Irbay, who was the main treating physician who had treated Mr. Benson for years and who saw him on a frequent basis. And in addition to that, we submitted additional video evidence. So those are the three items that were submitted after the initial appeal, but well before the final decision. On the reconsideration. Before the final decision on the reconsideration. Yes, Your Honor. I thought it was the president's letter submitted during the district court proceedings or earlier. I'm sorry. No, Your Honor. The appeal was decided, I don't have the exact dates memorized, but Hartford issued its opinion on the appeal. And as the court probably knows, under ERISA law, you can write and ask for a copy of the file. I immediately wrote and asked for a copy of the file. We got the file, and then we were able to read the decisions of the reviewing physicians, and it was clear they hadn't looked at the video. So I contacted Hartford, actually, on two grounds and said, number one, the reason you denied the appeal is completely different from the reason you denied the claim originally, and that's not fair, because I can't respond to a new reason. And number two, you didn't look at all the evidence. Well, Hartford didn't agree with the first. At that point, you were talking about that late letter from Dr. Irby and the video. Well, no. So then what happened when I asked them, at the time I asked that they hadn't reviewed all the evidence that had been submitted. With that letter, I submitted the additional evidence, which I now had, because Irby had a chance then to look at those doctors' opinions and respond to them. And because that was, frankly, that's when I had the letter from the president of the company. But it was submitted with my request that they reopen the record. They agreed to reopen the record, but they said, well, we're going to reopen the record, and we're going to withdraw our opinion and issue a final opinion. But we're only going to review some of the stuff and not the other stuff. And what did they not review? They did not review the letter from the president that was so praiseworthy and talked about how he functioned when he came back to work for that extended period of time. And they did not review Dr. Irby's second medical report. OK, thank you. Thank you. I see I'm really out of time. I'll try to cover this in my rebuttal. Thank you. Mr. Dawson. Well, this is how it goes. Good morning. Gerald Dawson for Hartford. What's really at issue here is whether the evidence in the administrative record to which the court's review is confined demonstrates that Mr. Benson was precluded from doing his job by his PMR throughout and beyond the elimination period. The elimination period is the period between. While it's on my mind, if you wouldn't mind, I'd like you to respond about the president's letter. Oh, certainly, Your Honor. So the president's letter was submitted after Hartford had made what Hartford considered to be its final decision. As Mr. Kahn was recounting, Hartford did fail to provide its reviewing positions with a video that he had submitted. And Hartford agreed to review the video. It did not open up its record and go make a whole new decision. What it did was it agreed to have the video reviewed by the peer reviewers to see if it in any way altered the conclusions that they had made in their previous reports, upon which Hartford's final decision had relied. The physicians did review the video and said, in effect, that it did not alter their previous conclusions and that it was not persuasive evidence of disability. When Mr. Kahn brought up the video, he also supplied an untimely report from Dr. Urbe purporting to respond to the peer reviewers' reports and also the letter from the company executive. Hartford's position was and is that the Dr. Urbe report, the last one, and the letter from the company executive were untimely, and that it was only considering the video after the fact of its final decision because it had had the video previously and just failed to look at it. So they acknowledged that mistake and corrected it. Hartford's position was and is that that did not open the door for Mr. Kahn to provide whatever other evidence he felt like having Hartford review. Furthermore. So tell me why that position is consistent with the rule that the decision maker has to look at all the evidence available at the time it makes its decision. Well, Hartford made its final decision in response to what appeared to be a complete appeal by Mr. Benson on June 2 of 2017. And this other information, the Dr. Urbe report and the letter from the company executive, came after that. So what Mr. Kahn is doing is characterizing the very last communication from Hartford as its final decision. In fact, the final decision was made on June 2 before that information, the letter from the company executive, was submitted. Wasn't the process opened up again after the June 2 letter? Hartford agreed only. Hartford said it would look at the video that it hadn't looked at before because it had mistakenly failed to do that. And they acknowledged that error and they corrected it. In no way did Hartford invite and in no way does the policy or law provide that if they're going to look at one thing that they had before the appeal was their error and look at that, nothing says that that means they have to consider anything and everything that is sent to them after that. There is no, the final decision was made in June. It was only after that that this other information came in. But Hartford did not reopen its claim record in order to consider anything and everything that might come in after that final decision. They agreed only to look at that which they had already had before the final decision but had failed to look at when they were supposed to. So would you set out the rule as the company is, the insurance company is obligated to consider the information that they have at the record of their first final decision. If they neglect to look at something on that time, they can reopen the record, they can reopen the process only to review information that they already had, but not to accept any additional information. Correct. And this issue wasn't really, this wasn't briefed exactly, but there is a raft of ERISA case law that says that once a final decision is made, there is no obligation on the part of the claim administrator to consider information that is provided or submitted after that. And what's the authority for the idea that the final decision was on the appeal and that this reconsideration or whatever you call it was not the final decision? Well, when Hartford made what it believed was its final decision, it was based on all the evidence before it. The appeal was complete. Right, but is there a rule? What says that the decision made after the appeal, the one that was made in June, was the final decision, such that Hartford was entitled not to look at any evidence submitted after that? Any new evidence? Well, as I say, there's a host of decisions which I have not with me. But in general, the principle is that when a final decision is made, you don't get to submit more information. But isn't it hard? Hartford did look at that one piece of information that it had prior to the appeal, or when the appeal was submitted, because they had failed to do that. That in no way entitled Mr. Benson to then submit any number of new doctor reports or other evidence that he failed to submit when his appeal was being decided. Isn't it hard to say that the June 2 decision was the final decision when there was, in fact, another decision after that? No, it's not. Because after that, the only thing Hartford said, and I can find the letter and quote it, all Hartford said at the end was, the video you submitted does not alter our final decision, which we made back in June. We showed the video. We let the video, we gave the video to the reviewing physicians. They looked at it. And they gave us addendums to their previous reports, saying that it didn't affect their previous analysis on which Hartford had relied. Let me tell you what my law clerk said about this issue. I haven't really studied it myself. But my law clerk says, Benson doesn't mention this boss's letter and his complaint and doesn't present any proof in his motion for summary judgment or in his brief that Hartford actually had it. Indeed, his letter to Hartford asking for reconsideration only mentions the video, not the letter. Therefore, and she goes on to say something, what do you say about that? Did he really present this to Hartford in his arguments? To my understanding, it was submitted to Hartford at the same time as the report from Dr. Irby, which purported to respond to and criticize the peer reviews on appeal that Hartford had relied on. I don't believe he based any argument upon it. But certainly, I wouldn't deny that Hartford did have it at the time that . . . Suppose it's error that it wasn't submitted to the doctors. What's the substance of it? Is it such that we should send the case back? No. I don't believe that Hartford would have provided that letter to the peer reviewers in any event because it's not medical evidence. It's simply a layperson providing his impressions. But what's relevant here and what should decide this case is the medical evidence that existed during the elimination period, which he has to prove he was disabled throughout. If Hartford had it and it's not medical evidence, is there any indication that the company did not consider it in the final decision? I'm sorry, Your Honor, I don't understand. You said you admit candidly, and I appreciate it, that Hartford had the letter before the final decision. Well, no, Your Honor. They had the letter after the final decision. Well, before the reconsideration. Before the last communication, which said, no, your video does not alter . . . Yes, Your Honor. Okay. Is there any indication they did not consider it? In fact, and if you like, I can find the letter and quote it, but what happened was in Hartford's last communication, which is being mischaracterized as a final decision, in Hartford's last communication to Mr. Benson's attorney, they said, one, the video that we had before that we mistakenly failed to look at originally, that video does not alter the peer reviewer opinions on which we rely. And two, the other information you provided, the untimely report from Dr. Urbay and the letter from the company president, were not considered because they were not submitted timely during the appeal. So they did inform him that we didn't consider it because of when it was submitted. I don't see any reference to the letter in, I mean, to the boss's letter in the denial of reconsideration. Maybe I'm missing it. Maybe I am. I see where it says the information from Dr. Urbay was not a part of the original documentation and so it was not provided to the doctors as it had not been reviewed, but I don't see any reference to the letter. I may have been mistaken then. Oh, that's right. I have the quotation here. Dr. Urbay's last letter was not a part of the original documentation for submitted for appeal and therefore it was not provided to the reviewing doctors and has not been reviewed. The company letter, the company president letter, which was submitted with that, was not reviewed either and I assumed that that's the same rationale because it was not timely received. In this case, I don't think it would have been provided to the peer reviewers in any event because, as I say, it's not medical evidence. It was just subjective impressions of a layperson. Furthermore, if I may, the letter from the company executive shed no light whatsoever on what's the issue in this case, namely whether Mr. Benson was disabled throughout and beyond the elimination period. The elimination period goes from when he stopped working for about three months to when he would start receiving LTD benefits if he were eligible for them. In other words, from May 15th to August 27th of 2016. That's it. That's all this case is about is those three months. And the boss's letter had to do with time after that? Yes, Your Honor. Okay, I got you. So nothing he said, even if he were a doctor or had any medical qualifications, which he wasn't and didn't, nothing he said would have the slightest bearing whatsoever on the central question in the case, which is whether the evidence in the administrative record demonstrates Mr. Benson's disability during the time period of May 15th, 2016, to August 27th, 2016. What does have a significant bearing, a dispositive bearing on that question, are the contemporaneous medical records from during and shortly after that period. Some of those records were referenced by Judge Pryor earlier. There are records in which, for example, on July 30th, and remember, the PMR is the sole condition claimed by Mr. Benson to be disabled. On July 30th, 2016, Dr. Irbay recorded that Benson felt, quote, great, unquote, with respect to his PMR. That is right in the middle of the elimination period. He felt great. So the concept that he was, and nothing from the company president's letter about future events or later events would in any way detract from Dr. Irbay recording that Benson himself said he felt great with respect to his PMR during the elimination period. That particular record is at DE 46-5, page 129. Also, there are a number of other records from during the elimination period that are very telling. On August 5th, 2016, at a visit to Dr. Irbay, Mr. Benson said that his knee pain, not from his PMR pain, his pain from his knee, which is not claimed as disabling, was 4 out of 10. That office visit note, which is at DE 46-5, page 83, makes no mention whatsoever of pain from PMR. There are other ones as well. On August 2nd, 2016, Dr. Irbay submitted an attending physician statement in support of the disability claim, and 5, 4, 3, oh boy. I'll just finish my sentence, if I may. It made no mention whatsoever of any symptoms from PMR. May I possibly have 30 more seconds? Because I was answering questions for a lot, and I didn't get to really get to a couple things I was hoping to. You may. Thank you. The last thing I just want to point out is that on June 27th, 2016, Mr. Benson visited his treating rheumatologist. A rheumatologist is the specialist who would have the most expert knowledge of PMR, as distinguished from Dr. Irbay, who was an internal medicine physician. And Dr. Longley, that's the rheumatologist, noted in his treatment record of that day that Benson's PMR was, quote, well controlled, unquote. And at no time did the treating rheumatologist ever suggest there was any degree of impairment from PMR. Therefore, it is not possible for Mr. Benson to prove that he was disabled throughout and beyond the elimination period. That was right in the middle of the elimination period. Thank you very much for your indulgence, and I will sit down and shut up now. Thank you. Three quick points. It is true, is it not, that you have to be disabled throughout the entire elimination period. Therefore, the boss's letter is just irrelevant. Is that not true? I would say it's not true, because the boss's letter helps to establish Mr. Benson's credibility. And essentially, when you've got disability due to pain and fatigue, it's a credibility issue. Because you can't slap an x-ray up on a screen and say, that person has pain at level five. You can't look at the findings on a physical exam and say what level of pain somebody has. Yet, obviously, and by definition, if pain gets to a certain level on a scale of one to 10, it's generally between four and five, you can't work anymore. You certainly can't work productively on a regular set schedule full time. And that's exactly the problem that Mr. Benson has. He can't work productively, and his credibility was established by the fact that he returned to work and he worked at a huge reduction in pay and tried the best that he could during that period of time, and he said he couldn't do it earlier. So it shows how badly he was hurting when he was trying to work supports the fact that earlier he was not able to work. But there are two, just real quickly, it's not a final decision if it's not based on all the evidence that was submitted. So the June decision is not a final decision. It can't possibly be a final decision. Secondly, Benson never claimed that he was disabled just by the PMR. That's not true. The precipitating event that took him out of work is the knee injury. Hartford's own medical department said, he's got complicated medical issues, this is a bad injury, he's clearly disabled, and that's why they paid him short-term disability. Then he got a total knee replacement. Hartford's own guidelines for people that don't have all of Benson's medical issues says that that will keep you totally disabled for 55 days. 55 days takes him way beyond the date at which he's eligible for long-term disability benefits. Hartford's own medical department said actually with Mr. Benson, he's more likely to be totally disabled for 90 days. This is Hartford's own medical department. The reason that there are reports on a couple of days about how great he feels with respect to his PMR is because in anticipation of the surgery, they gave him huge doses of steroids. These are unsustainable doses of steroids. Steroids themselves cause injury and cause pain and cause fatigue. So you can feel great on a certain day. It would be like somebody that hugely overdoses on pain medication. They may feel great on a certain day, but they can't work like that. You can't show up at a job that requires that you work five days a week, eight hours a day productively when you're having a great day because they pushed your steroids up there. That record's absolutely clear on this. His normal dosage before he got hurt was only about 7.5, which is at the upper limit of what you can chronically take and maintain health. They pushed him all the way up to 40 before the surgery in anticipation of the surgery. And then they had to bring him back down. And when they brought him back down, his symptoms went through the roof. And the doctor's calling Hartford and saying, he can't go to work. He can't even do his ADLs. We understand your argument. Pardon? Thank you, Mr. Kahn. We understand your argument. I'm sorry, I ran over. I apologize. Well, he ran over. You ran over. It's all fair. Thank you. Thank you. All right. All right, I think you just made your statement. Thank you. Court is adjourned. Thank you. All rise.